IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL NO. 04-814-1 |
| vs. | : | |
| | : | |
| | : | |
| WILLIAM LOWERY | : | |

Tucker, J.                                                                                       June ____, 2006

## MEMORANDUM AND ORDER

Presently before this Court is Defendant, William Lowery's ("Lowery") Motion to Dismiss the Indictment or for a New Trial or Judgment of Acquittal Pursuant to FED. R. CRIM. P. 29(c)(1) and 33(a) (Doc. 50). For the reasons set forth below, upon consideration of Defendant's Motion to Dismiss (Doc. 50), Defendant's Supplemental Memorandum of Law in Support of His Motion (Doc. 57), the Government's Response thereto (Doc. 58), and Defendant's Sur-reply (Doc. 59), this Court will deny Defendant's Motion for a New Trial or Judgment of Acquittal.

## FACTUAL BACKGROUND

On May 28, 2004, Defendant Lowery was arrested in Norristown, Pennsylvania for violations of his parole. (Trial Tr. vol. 1, 4-5, Aug. 15, 2005.) Following his arrest, authorities proceeded directly to Lowery's residence, located at 301 Linden Avenue in North Hills, Pennsylvania to search for further evidence of parole violations.[1]  *Id.*  The door to the bedroom was padlocked with a "U-Haul" padlock from the Defendant's prior place of employment. (Resp. in Opp'n by the Gov't at

---

[1] Defendant Lowery had previously served a state prison sentence for a robbery conviction and was released from the Pennsylvania Department of Corrections on February 3, 2003. Prior to May 28, 2004, Defendant Lowery had sustained multiple felony convictions, including at least two crimes of violence. As a result of those convictions, Defendant Lowery was not permitted to possess a firearm by law.

1.) The authorities were able to unlock the door to the bedroom with a key seized from the Defendant. *Id.* Defendant's girlfriend, Fiona Hopkins ("Hopkins"), with whom he shared the residence, was home at the time of the search and she identified the Defendant's side of the bedroom. *Id.* During the search of the bedroom, parole agents recovered a firearm underneath the mattress on the Defendant's side of the bed. (Trial Tr. vol. 1, 40-41, Aug. 15, 2005.) Parole agents found personal belongings of a male individual on the side of the room where the firearm was located, which included Defendant's prison identification card and a citation received by the Defendant.[2] (Resp. in Opp'n by the Gov't at 1.) Finally, the firearm was registered to and previously purchased by Defendant's sister, Bernadette Lowery ("Bernadette"). *Id.* at 2.

On December 21, 2004, Lowery was charged in a single-count indictment with having previously been convicted in a court of the Commonwealth of Pennsylvania of a crime punishable by imprisonment for a term exceeding one year and knowingly possessing in and affecting interstate commerce a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). On August 17, 2005, following a two-day jury trial, Lowery was found guilty of the one count charge in the Indictment. Defendant now moves this Court to grant a new trial or judgment of acquittal pursuant to FED. R. CRIM. P. 29(c)(1) and 33(a).

## STANDARD OF REVIEW

Rule 29(c)(1) provides that "a defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later." FED. R. CRIM. P. 29(c)(1). Rule 33(a) provides that "the court may vacate any judgment

---

[2] Female belongings were also found in the bedroom, however they were located on a different side of the room from the firearm and Defendant's personal belongings. (Resp. in Opp'n by the Gov't at 1-2.)

2

and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a).  Whether to grant a [Rule] 33 motion lies within the sound discretion of the district court.  *See United States v. Mastro*, 570 F. Supp. 1388, 1390 (E.D. Pa. 1983).  A court may grant a new trial if one of two reasons exists: (1) if after weighing the evidence, the court determines that there has been a miscarriage of justice or (2) if a trial error had a substantial influence on the verdict.  *Gov't of the Virgin Islands v. Commissiong*, 706 F. Supp. 1172, 1184 (D.Vi.1989); *Gov't of the Virgin Islands v. Bedford*, 671 F.2d 758, 762 (3d Cir. 1982).  "Motions for a new trial based on the weight of the evidence are not favored.  Such motions are to be granted sparingly and only in exceptional cases." *United States v. Steptoe*, No. 01-429-02, 2003 U.S. Dist. LEXIS 12148, at *6 (E.D. Pa. Jun. 18, 2003) (citing *Gov't of the Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).

## DISCUSSION

In his Motion to Dismiss the Indictment or For a New Trial or Judgment of Acquittal, Defendant asserts the following four claims: (1) the Court erred in denying Defendant's Motion to Suppress Physical Evidence; (2) the Court erred in changing the date in the Indictment from May 10, 2004 to May 28, 2004, in violation Defendant's Fifth Amendment Rights; (3) the Court erred by failing to dismiss the Indictment as the remedy for a violation of the Defendant's rights under FED. R. CRIM. P. 5(a); and (4) the Court erred in giving the jury an instruction on joint possession. The Court will address each of the Defendant's challenges in turn.

**A.     The Court's Order Denying Defendant's Motion to Suppress**

Defendant asserts that because there was no reasonable suspicion to believe that contraband would be found at his place of residence, the search resulted in a violation of his Fourth Amendment

rights against an unreasonable search. Defendant acknowledges that he had previously failed three urine tests, was found with large sums of money on his person, which the parole officers found suspicious, and had not been forthcoming regarding his place of residence. (Def.'s Mot. to Dismiss at 4.) Despite these concessions, Defendant contends that no circumstances existed to give authorities a particularized and objective basis for suspecting parole violations at his authorized residence, 301 Linden Avenue in North Hills, Pennsylvania. *Id*. According to Defendant, the absence of this crucial link defeats any claim that the totality of circumstances points to the conclusion that reasonable suspicion existed to justify the search. *Id*.

In its Response in Opposition, the Government asserts that when parole agents have reasonable suspicion to believe that evidence of parole violations will be found in a parolee's place of residence, they are duty-bound to investigate. *United States v. Hill*, 967 F.2d 902, 910 (3d Cir. 1992). The Government contends that reasonable suspicions existed and that it had a duty to investigate because Defendant had a history of drug abuse, failed to complete the required drug treatment programs, moved without obtaining the necessary permission, had contact with a known drug dealer, failed to maintain employment, possessed large amounts of unexplained cash, and submitted urine that tested positive for marijuana on at least three occasions.[3] (Resp. in Opp'n by the Gov't at 3.)

In *Griffin v. Wisconsin*, the United States Supreme Court held that supervision in the probation system is considered a "'special' need of the State permitting a degree of impingement

---

[3] Pennsylvania State Parole Agent Harry Gaab ("Gaab") was Defendant's parole officer at the time of the search and had been supervising Defendant for approximately fourteen to fifteen months. The Government contends that based upon Detective Gaab's extensive training, education and experience, he had reasonable suspicion to justify a search of Defendant's home. (Resp. in Opp'n by the Gov't at 3.)

upon privacy that would not be constitutional if applied to the public at large." 484 U.S. 868, 875-76 (1987).  The Court recognized that while a home is protected by the Fourth Amendment's requirement that searches must be reasonable, requiring a warrant supported by probable cause, "government investigators conducting searches pursuant to a regulatory scheme" do not need to adhere to these requirements so long as the searches meet "reasonable legislative or administrative standards."  *Id*. at 873.  Furthermore, a State's supervision of a regulated industry or its operation of a probation system or prison, presents "special needs" beyond normal police departures from the probable cause and warrant requirements.  *Id*. at 873-74.

The Third Circuit extended *Griffin* to apply to parolees in *United States v. Hill*.  967 F.2d 902 (3d Cir. 1992) (holding that the search without a warrant of a parolee's property was reasonable under the Fourth Amendment so long as the search was based upon reasonable suspicion).  In *Hill*, the Court stated that parole authorities "have a 'special and unique interest in invading the privacy of parolees under their supervision.'"  *Id*. (quoting *Latta v. Fitzharris*, 521 F.2d 246, 250 (9th Cir. 1975)).  Furthermore, parole officers are required to have a "thorough understanding of the parolee and his environment, including his personal habits, his relationships with other persons, and what he is doing, both at home and outside of it.  *Id*. at 909-10.  Such an understanding is gained only by carrying out some sort of search, and as such in these circumstances, it is reasonable for a parole officer to search "whenever he reasonably believes that it is necessary to perform his duties."  *Id*.  While the decision to conduct a search must be based on particular facts, the parole officer does not need to have probable cause.  *Id*.

Accordingly, it is clear that the authorities had sufficient reasonable suspicion and the required reasonable grounds to conduct a warrantless search of Defendant's home.  As such, the

Court did not err in its denial of Defendant's Motion to Suppress Physical Evidence (Doc. 49).

**B.     The Amendment of the Indictment**

Defendant asserts that the Court erred in changing the date of the offense in the Indictment from May 10, 2004 to May 28, 2004. Defendant contends that only the grand jury could amend the Indictment and this substantive change violated his Fifth Amendment rights. (Def.'s Mot. to Dismiss at 5.) This Court does not agree.

"An indictment is amended when it is so altered as to charge a different offense from that found by the grand jury." *United States v. Miller*, 471 U.S. 130, 144-45 (1985). A conviction must only be vacated and an indictment dismissed where there was a variance at trial between the Indictment and the proof presented and the variance prejudices a substantial right of the defendant. *United States v. Schurr*, 775 F.2d 549, 553 (3d Cir. 1985). Material variances between the Indictment and proof presented at trial are proscribed as a means of protecting the rights of a defendant in three fundamental ways. First, the rule protects a defendant's right "not to be tried en masse for the conglomeration of distinct and separate offenses committed by others." *Id*. at 553-54 (citing *United States v. Camiel*, 689 F.2d 31, 38 (3d Cir. 1982)). Next, "the rule protects a defendant's right to have an 'indictment sufficiently inform[ing] [him] of the charges against him so that he may prepare his defense and not be misled or surprised during the trial.'" *Id*. (citing *United States v. Schoenhut*, 576 F.2d 1010, 1021-22 (3d Cir. 1978)). Finally, the rule helps "minimize 'the danger that the defendant may be prosecuted a second time for the same offense.'" *Id*.

The Third Circuit has held that where a simple clerical error occurs, such as alleging an incorrect date on an indictment, and the defendant is not substantially prejudiced by the amendment,

the amendment is harmless error and the defendant's Fifth Amendment rights have not been violated. *See United States v. Ridens*, 362 F. Supp. 358 (3d Cir. 1973) (holding that stating the incorrect date for the offense on the Indictment was simply a clerical error and thus did not prejudice the defendant). In the present case, the incorrect date of the alleged offense as stated in the Indictment is neither material nor substantial to the essence of the offense charged. The date of the offense is not an essential element of the offense charged – unlawful possession of a firearm by a convicted felon – nor is it made material by 18 U.S.C. § 922(g)(1). This Court finds that the incorrect date as stated on the Indictment is a clerical error and does not violate Defendant's Fifth Amendment rights. Accordingly, the amendment was proper and the Court did not err in failing to dismiss the Indictment.

**C.     Jury Instruction on Joint Possession**

Defendant claims that the Court erred in giving the jury an instruction on joint possession.[4] (Def.'s Mot. to Dismiss at 5.) Defendant argues that because the evidence was insufficient to support the verdict, this charge was by its very nature error and should have not been given to the jury. *Id*. The Government counters that this Court's instruction was warranted and proper because the evidence showed that the belongings of a man and a woman were found in the Defendant's bedroom. (Resp. in Opp'n by the Gov't at 4.) Absent the instruction, the Government argues that

---

[4] With respect to the possession of the firearm, Defendant was charged under the doctrine of constructive possession. The Third Circuit has held that constructive possession applies where "a person, who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." *United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999).

The Court's instructions clarified that while "possession" means to have something within a person's control, it does not necessarily mean that a defendant must hold it physically. Moreover, the Court further explained that possession includes sole and joint possession as well as actual and constructive possession.

the jury may not have accurately understood the legal concept and such a misunderstanding could have led to confusion about whether they must find the Defendant, and only the Defendant, had dominion and control over the firearm in this case. *Id*. Thus, according to the Government, the Court properly instructed the jury regarding joint possession to avoid any misapprehension of the law.

The Third Circuit has held that the examination of an alleged erroneous jury instruction requires the Court to view the charge as a whole. *Ayoub v. Spencer*, 550 F.2d 164, 167 (3d Cir. 1977) (citing *Ely v. Reading Co.*, 424 F.3d 758, 760 (3d Cir. 1970)). It is the role of the Court to determine "whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." *Id*. (citing *James v. Continental Ins. Co.*, 424 F.2d 1064, 1065 (3d Cir. 1970)). Furthermore, the Third Circuit grants deference to the district courts and "will reverse a district court's denial to charge a particular jury instruction only when the requested instruction was correct, not substantially covered by the instructions given, and was so consequential that refusal to give the instruction was prejudicial to the defendant." *United States v. Phillips*, 959 F.2d 1187, 1191 (3d Cir. 1992).

In his Motion to Dismiss the Indictment or for a New Trial or Judgment of Acquittal, Defendant argues that the Court erred in giving the jury an instruction on the joint possession because no evidence was presented at trial to conclude that he was aware of the presence of the firearm found under the mattress in the bedroom at his residence.[5] (Def.'s Mot. to Dismiss at 1-2.)

---

[5] To establish a violation of 18 U.S.C. § 922(g)(1), the Government must prove: (1) that Lowery had previously been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that Lowery knowingly possessed a firearm; and (3) that the firearm had passed in interstate commerce. *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000). Lowery and the Government stipulated to the first and third elements leaving only the second element at issue for the jury.

8

In his Supplemental Memorandum, Defendant further argues where there is joint occupancy and a fact finder can only speculate whether both of the room's occupants or a particular one of them knew of the presence of the contraband, the evidence is insufficient as a matter of law to establish that he had actual or constructive possession of the firearm. (Def.'s Supp. Mem. at 7.) The Government counters that because no eyewitness testimony was offered in this case to prove Defendant possessed the firearm in question, "[i]nferences from established facts are acceptable methods of proof when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred." *United States v. Clemmons*, 892 F.2d 1153, 1159 (3d Cir. 1990). "The fact that evidence is circumstantial does not make it less probative than direct." *Id*.

Defendant counters that this case is analogous to *United States v. Bonham*. 477 F.2d 1137 (3d Cir. 1973) (holding that where two persons share the occupancy of a room and the right to exclude others from it an inference of exercising knowing dominion and control over a particular chattel must be based upon more than speculation). In *Bonham*, the Court noted that if a defendant is not in the exclusive possession of a premises, a fact finder may not infer that a defendant knows of the presence or has control over an item found in the premises, "unless there are other incriminating statements or circumstances tending to buttress such an inference." *Id*. (citation omitted).

The Court disagrees and finds that because of the possibility of both persons having access to the room, a joint possession instruction was appropriate and the evidence is sufficient to establish Defendant's possession. Moreover, this case is distinguishable from *Bonham*. In *Bonham*, the Court found that there was nothing except the joint occupancy of the room upon which an inference of

9

possession could be based. *Id*. at 1139. In the present case, there are other indicia of Defendant's dominion and control over the firearm found in his residence. The facts of this case show that the firearm was found inside a "U-Haul" padlocked room, to which Defendant had key access. (Resp. in Opp'n by the Gov't at 2-3). U-Haul is Defendant's previous employer. Additionally, both the belongings of a man and a woman were found in the bedroom. *Id*. at 2. The gun was found under the mattress on the side of the room where Defendant's belongings were found. Although Defendant's girlfriend, Watkins, shared the bedroom and mattress under which the firearm was found, Defendant could still validly be found with constructive possession of the firearm because Defendant had the power and intent to exercise dominion and control over the firearm. The evidence that Defendant's sister, Bernadette, who had no other connection to the bedroom, purchased the firearm, bolsters the possession argument by providing the nexus between the defendant and the firearm. While Watkins may have had access to the room, there was no evidence offered at trial that she had ever possessed the firearm in question. Defendant is the only person who had access to the room, the padlock, and a connection to the firearm in question. Thus, in reviewing the charge as a whole and in light of the evidence presented, the Court finds that the jury instructions regarding joint possession fairly and adequately submitted the issues in the case to the jury. Defendant's Motion is denied.

## CONCLUSION

Based on the foregoing reasons, the Court will deny the Defendant's Motion to Dismiss the Indictment or For a New Trial or Judgment of Acquittal. An appropriate order follows.