IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM LOWERY,<br>      Petitioner,<br>  v.<br>UNITED STATES OF AMERICA,<br>      Respondent. | :<br>:<br>:   CIVIL ACTION NO. 08-3571<br>:<br>:   CRIMINAL ACTION NO. 04-814<br>:<br>:<br>: |

**MEMORANDUM AND ORDER**

Tucker, J.                                                                                                           March 25, 2009

      Presently before this Court is Petitioner William Lowery's Habeas Corpus Petition to Vacate/Set Aside/Correct Sentence Pursuant to 28 U.S.C. § 2255, and the Government's Memorandum in Opposition. For the reasons set forth below, this Court will deny Petitioner's Motion.

**BACKGROUND**

      In May of 2004, parole agents and police officers searched the residence of William Lowery, Petitioner. The search uncovered a firearm. At the time of the search, Petitioner was a state parolee with several prior convictions for violent crimes. As a parolee, Petitioner could not lawfully possess a firearm. Furthermore, as a parolee, Petitioner agreed, by signing a consent agreement, that the Pennsylvania Board of Probation and Parole could search and seize items from his person, property, and residence without a warrant.

      In September of 2004, a grand jury in the Eastern District of Pennsylvania indicted Petitioner, charging him with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

1

After the grand jury indicted Petitioner, Assistant Federal Public Defender Edson Bostic ("prior counsel") was appointed to represent him.  Then, prior to trial, Petitioner hired Joel Slomsky ("trial counsel") to represent him.

Trial counsel presented several pre-trial motions for the defense, including a motion to suppress the firearm.  This court denied the motion to suppress the firearm, but this Court granted other motions, including a motion to exclude evidence of narcotics recovered with the firearm.

Following a two-day trial, on August 18, 2005, a jury found Petitioner guilty of the sole count charged in the indictment.

Trial counsel then presented several post-trial motions, but this Court denied each of the motions.  Then, on September 27, 2006, this Court sentenced Petitioner to seventy-two months imprisonment.

After the sentencing, trial counsel litigated an appeal.  On appeal, trial counsel attacked the sufficiency of the evidence, the Court's jury instructions, and the Sentencing Guidelines calculation.  However, the Third Circuit affirmed Petitioner's conviction on February 20, 2008.

Petitioner filed a pro se motion claiming newly discovered evidence, pursuant to Federal Rule of Criminal Procedure 33.  As part of the motion, Petitioner claimed that the prosecution's witnesses engaged in perjury.  On June 4, 2008, this Court denied the motion.  The Third Circuit affirmed this Court's decision on October 1, 2008.

Finally, Petitioner filed this pro se petition pursuant to 28 U.S.C. § 2255 on July 30, 2008, and filed a pro se motion to amend the petition on January 8, 2009.

## **LEGAL STANDARD**

28 U.S.C.§ 2255 provides that a prisoner in custody under sentence of the Court, who

believes that the sentence was imposed in violation of the Constitution or laws of the United States, or believes that the sentence is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence. Relief for a habeas corpus petition is proper where judgment was made without jurisdiction, the sentence was not authorized by law, or the prisoner has suffered an infringement of constitutional rights.

## DISCUSSION

Petitioner raises the following claims in his original and amended § 2255 motions: (1) a violation of Fourth Amendment rights; (2) a violation of ex post facto and contracts principles; (3) the admission of perjured testimony; (4) ineffective assistance of counsel; and (5) a Brady violation.

Under 28 U.S.C. § 2255, claims may be barred because they are either substantively or procedurally inadequate. As such, this Court will deny Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, as all of Petitioner's claims are substantively without merit and fail to entitle him to relief.

**Claim 1: Violation of Fourth Amendment Rights**

Petitioner claims that the search of the residence, specifically the search that led to the discovery and seizure of the unlawful firearm, violated his Fourth Amendment rights. Initially, Petitioner acknowledged that he signed a parole search agreement form prior to his release from prison, allowing parole agents to search his property. Yet, Petitioner claims that the presence and participation of police offers, in addition to the parole agents, made the search and seizure unconstitutional. However, Petitioner's reasoning is incorrect.

The United States Court of Appeals for the Third Circuit has held that no more than a reasonable suspicion is required to justify the search of a parolee. *United States v. Williams*, 417

F.3d 373, 376 (3d Cir. 2005). When a parolee has signed a consent agreement, like the agreement that Petitioner signed, "the parolee's reasonable expectation of privacy is decreased and the government's reasonable need to monitor behavior is increased. To decide whether reasonable suspicion exists, we consider the totality of the circumstances to determine whether the officer has a particularized and objective basis for suspecting legal wrongdoing." *Id.* (internal quotations omitted).

This Court twice found the search of the residence and subsequent seizure of the firearm to be constitutional. Under the totality of the circumstances, there was sufficient reasonable suspicion for the search of the premises. The parole officer knew that Petitioner had been arrested for robbery while under the influence of drugs. Then, while on parole, Petitioner admitted that he was having financial problems, submitted stolen urine samples, and was in possession of a large amount of money. Again, this Court finds that, under the totality of the circumstances, there was reasonable suspicion to search the residence.

Moreover, the mere presence of police officers, in addition to the parole officers, does not make the search unconstitutional. The Third Circuit has explicitly ruled that "stalking horse" claims are barred by Supreme Court precedent. As the Third Circuit has reasoned, collaboration between parole officers and the police "is expected given the similar duties of parole officers and police officers." *Id.* at 377.

Instead, "the appropriate inquiry is whether the probation officer used the probation search to help police evade the Fourth Amendment's usual warrant and probable cause requirements or whether the probation officer enlisted the police to assist his own legitimate objectives." *Id.* (internal quotations omitted). As long as a probation officer initiates the search in the performance of his duties as a probation officer, the probation officer does not act as a stalking horse." *Id.* (internal

4

quotations omitted).

Here, as in Williams, the parolee has presented no evidence of an explicit agreement between the parole officers and the police.  *Id.*  Furthermore, as explained above, the parole officer had reasonable suspicion to initiate the search in performance of his duties as a parole officer.

Since the search of the residence and subsequent seizure of the firearm occurred pursuant to reasonable suspicion, as required by the parole consent agreement, and the presence of the police officers in addition to the parole officers was lawful, the government did not violate Petitioner's Fourth Amendment rights.  As such, Petitioner's first claim for relief is wholly without merit.

**Claim 2: Violation of ex post facto and contracts principles**

Petitioner claims that his conviction violated the Constitutional prohibition against ex post facto laws.  According to Petitioner, Montgomery County did not begin to participate in Project Safe Neighborhoods ("Project") until after Petitioner had committed the offense.  Then, according to Petitioner, after the County began to participate in the Project, Petitioner's case was referred to the Project, and the prosecutor chose to press federal charges.

Essentially, Petitioner alleges that he would not have received a federal punishment if the Project had not been retroactively applied to his case and, as a result, Petitioner insists that his conviction violated the ex post facto clause.  However, Petitioner's claimed violation of the ex post facto clause of the Constitution lacks merit.

The Supreme Court of the United States has explained that the ex post facto clause prohibits any law "that made an act done before the passing of the law, and which was innocent when done, criminal; or which aggravated a crime, and made it greater than it was when committed; or which changed the punishment, and inflicted a greater punishment than the law annexed to the crime when

5

committed; or which alters the legal rules of evidence, and required less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender." *Carmell v. Texas*, 529 U.S. 513, 524-25 (2000) (internal quotations omitted).

The Project is not a sentencing provision or evidentiary rule. Rather, the Project is merely a funded initiative that aids in the exercise of prosecutorial discretion within the Department of Justice. Petitioner was convicted of a federal offense, a violation of 18 U.S.C. § 922(g), that existed before Petitioner committed the crime. Further, the concept of prosecutorial discretion existed before Petitioner committed the crime.

As such, even though Montgomery County did not participate in the Project until after Petitioner had committed the crime, the federal courts did have jurisdiction to hear Petitioner's case at the time Petitioner committed the crime. In fact, as Petitioner admits, at Petitioner's preliminary hearing, prior to the County's participation the Project, the prosecutor stated that he was seeking federal charges. Since the County's participation in the Project did not affect Petitioner's criminal liability in any way, Petitioner presents no evidence of an ex post facto violation.[1]

Also, as part of Petitioner's argument that his conviction violated the prohibition against ex post facto laws, Petitioner claims that the Department of Justice's Petite policy further shows that he should not have been federally prosecuted. As the Third Circuit has explained, the Petite policy is most frequently applied against duplicating federal-state prosecutions. *United States v. Grimes*, 641 F.2d 96, 101 & n.17 (3d Cir. 1981). Specifically, according to the Petite policy, a federal trial following a state prosecution for the same acts is barred unless the reasons are compelling. *Id.*

---

[1] See, e.g., *United States v. Leon H.*, 365 F.3d 750, 754 (9th Cir. 2004) (rejecting, under Federal Juvenile Delinquency Act, ex post facto claim similar to Petitioner Lowery's claim). As the Ninth Circuit explained in Leon H., "[b]oth [the charged offense] and the doctrine of prosecutorial discretion significantly pre-date Leon H.'s crime. The potential that [Leon H.] would be subject to the harsher level of penalties . . . existed when Leon H. committed his crime." *Id.*

However, the Petite policy does not apply to Petitioner because, regarding the state charges against Petitioner, a *nolle prosequi* was entered. Under current precedent, there is no double jeopardy bar to a prosecution in the federal system after a state suppression motion was granted and a *nolle prosequi* was entered in the state system. *United States v. Wilson*, 413 F.3d 382, 389-91 (3d Cir. 2005). Furthermore, in the Third Circuit, the government's possible failure to faithfully follow the Petite policy does not, by itself, render a federal conviction invalid if the federal prosecution arose from state charges that ended in entry of a *nolle prosequi*. *Id.* (reasoning that Justice Department guidelines do not create any rights for defendants). Consequently, the Petite policy does not apply to Petitioner, whose state charges concluded in this fashion.

Finally, although Petitioner asserts that his conviction violated both ex post facto and "contracts" principles, he fails to explain how his conviction violated contracts principles. As such, Petitioner's "contracts" claim also fails.

**Claim 3: Admission of Perjured Testimony**

Petitioner's third claim alleges that three of the four witnesses for the prosecution engaged in perjury, thus leading to his conviction. As a result, Petitioner insists that his due process rights were violated. Yet, in this instance also, Petitioner's third claim lacks merit.

First, Petitioner's claim that witnesses for the prosecution engaged in perjury, thus leading to his conviction, is procedurally barred. Absent exceptional circumstances, a federal prisoner may not relitigate claims through a § 2255 motion. *Barton v. United States*, 791 F.2d 265, 267 (2d Cir.1986) (collecting cases). The most common example of an "exceptional circumstance" that would allow relitigation of a previously raised claim is an intervening change in the law. *Davis v. United States*, 417 U.S. 333, 342 (1974). The bar against relitigation of claims applies to matters already raised on

direct appeal as well as other means of collateral attack. *E.g.*, *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993)(affirming the lower court's denial of claims raised in a § 2255 motion that had already been raised in a Rule 33 motion).

In the instant case, after the Third Circuit affirmed Petitioner's conviction, Petitioner filed a pro se motion claiming newly discovered evidence pursuant to Federal Rule of Criminal Procedure 33. Part of Petitioner's Rule 33 motion claimed that the prosecution's witnesses engaged in perjury. On June 4, 2008, this Court denied the motion. The Third Circuit affirmed this Court's decision on October 1, 2008.

Since Petitioner already raised the issue of perjury on the part of prosecutorial witnesses in a Rule 33 motion, Petitioner is procedurally barred from raising the same issue in his § 2255 motion.[2] There is no evidence of an intervening change in law or other "exceptional circumstance" that would allow relitigation of the previously raised claim.

Furthermore, Petitioner's claim that prosecutorial witnesses engaged in perjury is substantively without merit. Petitioner raises two main claims of perjured testimony, and both claims fail.

First, for both claims of perjury, Petitioner fails to provide clear evidence that the prosecutorial witness did in fact engage in perjury. Second, both claims of perjury relate to only collateral and immaterial facts. For example, Petitioner claims that the prosecutorial witnesses lied about which agent took photographs of the evidence. Petitioner also claims that a prosecutorial witness lied about the first day that he met the woman with whom Petitioner was living at the time

---

[2] Although Petitioner's § 2255 motion adds two new prosecutorial witnesses to the list of alleged perjurers, Petitioner's third claim still fails. The new claims of alleged perjury are substantively without merit, as the alleged perjury relates to only to collateral, immaterial issues. Petitioner fails to explain how the alleged perjured testimony resulted in his conviction.

the firearm was discovered.

Since the claims of perjury relate only to collateral, immaterial facts such as those stated above, Petitioner has failed to demonstrate how the allegedly perjured testimony resulted in his conviction.

**Claim 4: Ineffective Assistance of Counsel**

Next, Petitioner alleges that he received ineffective assistance of counsel. Petitioner provides six reasons in support of his claim that trial counsel was ineffective. According to Petitioner, trial counsel was ineffective for failure to (1) argue prior counsel's pre-trial motions; (2) appeal a denied suppression motion; (3) correct false testimony from prosecutorial witnesses; (4) use testimony from a prior court proceeding to impeach the credibility of prosecutorial witnesses; (5) investigate a potential violation of the Interstate Agreement on Detainers Act; and (6) interview prosecutorial law enforcement witnesses. In addition, Petitioner asserts that counsel was ineffective for failure to inform Petitioner that Petitioner had the right to testify in his own defense.

Claims of ineffective assistance of counsel in a criminal case are governed by a two part test as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires the defendant to show that (1) counsel's errors fell below an objective standard of reasonableness; and (2) but for counsel's errors, the result of the trial would have been different. *Id.* at 687. Yet, it is difficult to prevail on an ineffective assistance of counsel claim because according to *Strickland*, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

Petitioner first claims that trial counsel was ineffective for failing to argue prior counsel's

pre-trial motions.  Under the objective standard of reasonableness set forth in *Strickland*, counsel does not have a responsibility to indulge every whim of the client.  *Government of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1431-32 (3d Cir. 1996).  Counsel only has the responsibility to make reasonable investigations into factual matters, and can make reasonable decisions not to pursue certain lines of investigation.  *Id.*

Here, Petitioner admits that trial counsel investigated prior counsel's pre-trial motions, as trial counsel discussed the motions with both prior counsel and Petitioner.  Further, trial counsel did in fact pursue several of prior counsel's pre-trial motions, and trial counsel succeeded in several of the motions, including a motion to exclude evidence of the narcotics that were discovered with the firearm.  As such, trial counsel's decision not to pursue all of prior counsel's pre-trial motions did not fall below the objective standard of reasonableness.  Consequently, Petitioner's first claim of ineffective assistance of counsel fails to satisfy the first prong of the test set forth in *Strickland*.

Petitioner next claims that trial counsel was ineffective for failing to appeal the suppression motion.  "It is a well-established principle that counsel decides which issues to pursue on appeal." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996).   Furthermore, on appeal, "counsel's assistance does not become ineffective by failing to raise an issue when convincing Supreme Court case law shows it to be without merit."  *Parrish v. Fulcomer*, 150 F.3d 326, 328-29 (3d Cir. 1998).

In this case, trial counsel litigated the suppression request in a pre-trial motion, and he relitigated the suppression request again in a post-trial motion.  Thus, on appeal, trial counsel had the discretion to decide not to pursue the suppression issue.  Further, Supreme Court case law largely supports the search of the residence that uncovered the unlawful firearm.  Therefore, Petitioner's third claim also fails.

Petitioner's third claim alleges that trial counsel was ineffective for failing to correct false

testimony provided by prosecutorial witnesses, while his fourth asserts that trial counsel was ineffective for failing to use prior court testimony to impeach the credibility of prosecutorial witnesses. However, Petitioner makes no claim that the failure to correct allegedly false testimony or to impeach on collateral, immaterial issues constituted prejudicial error. As previously discussed, Petitioner has failed to explain how the correction of the allegedly false testimony or impeachment on irrelevant issues would have led to a different result at trial.

Fifth, Petitioner claims that trial counsel was ineffective for failing to investigate a potential violation of the Interstate Agreement on Detainers Act (IAD). The IAD minimizes interference with a prisoner's ability to receive the treatment and services of a particular institution. Petitioner maintains that the IAD was violated because Petitioner was forced to remain in federal custody, and he was not allowed to return to state custody, during the federal indictment.

Yet, the IAD does not apply to prisoners who are being detained due to a pre-trial detention order, and it does not apply to prisoners who are being held in custody pursuant to a parole violation warrant. *United States v. Dobson*, 585 F.2d 55, 58-59 (3d Cir. 1978). The IAD applies only to prisoners who are actually serving a sentence. *Id.*

Petitioner was not serving a state sentence when he was under federal indictment. In fact, Petitioner's state charges were *nolle prossed* prior to his federal trial. Once a *nolle prosequi* is entered, the prosecution is at an end, and the trial court lacks jurisdiction to impose any fine in connection with the charge that has been *nolle prossed*. 21 Am. Jur. 2d Criminal Law § 720. The effect of a *nolle prosequi* is to terminate the proceedings with respect to the charges. *Id.* Here, the state *nolle prossed* Petitioner's state charges and, as a result, Petitioner was not serving a state sentence while he was in custody during the federal indictment.

Since petitioner was not serving a state sentence while he was in custody, the IAD did not

apply to Petitioner and could not have been violated in Petitioner's case. Since the IAD was not violated, even if counsel had investigated a potential violation of the IAD, the result of Petitioner's trial would not have been different. Consequently, trial counsel's failure to investigate a potential violation of the IAD does not meet the second prong of the *Strickland* test and, therefore, cannot be found to constitute ineffective assistance of counsel.

Next, Petitioner maintains that trial counsel was ineffective for failing to interview prosecutorial law enforcement witnesses. Petitioner claims that interviewing the witnesses would have enabled trial counsel to more effectively cross-examine the witnesses. However, prior to trial, trial counsel received the preliminary hearing testimony and statements of the witnesses. In addition, trial counsel litigated a pre-trial motion to suppress and, thus had an opportunity to examine the witnesses prior to trial. As such, Petitioner's sixth claim of ineffective assistance of counsel fails to meet the *Strickland* test.

Finally, at the end of Petitioner's ineffective assistance of counsel argument, he insists that counsel was ineffective for failing to inform Petitioner that Petitioner had the right to testify in his own defense. Courts have held that a defendant cannot claim that his attorney was ineffective for failing to notify him of his right to testify if the defendant already knew of his right to testify. *E.g.*, *Payne v. United States*, 78 F.3d 343, 346 (8th Cir. 1996).

Here, the facts demonstrate that Petitioner knew that he had a right to testify in his own defense. First, at the time of trial, Petitioner had been found guilty of violent crimes on six separate, previous occasions. Second, in a jailhouse letter, Petitioner acknowledged his right to address the court, and he specifically referenced the section of the Pennsylvania Constitution that affords defendants the right to testify in proceedings against them. Third, prior to trial counsel's entry of appearance, the defense submitted two sets of proposed jury instructions regarding a defendant's

right to testify in his own defense.

Furthermore, Petitioner fails to explain how his testimony could have changed the outcome of the trial. Thus, Petitioner's last claim of ineffective assistance of counsel fails the *Strickland* test and is, therefore, without merit.

**Claim 5: Brady Violation**

Petitioner amended his habeas petition with a fifth claim for relief, alleging a *Brady* violation. Regardless of whether Petitioner's *Brady* claim satisfies the standard for amending a habeas petition under Federal Rule of Civil Procedure 15(a), his *Brady* claim is wholly without merit. As a result, Petitioner's fifth claim for relief fails.

According to *Brady*, the government has a duty to provide a defendant with potential exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83 (1963). In order to establish that the government violated *Brady*, a defendant must show that the evidence in question is "material either to guilt or to punishment." *Id.* at 87.

In the present case, Petitioner insists that the government committed a *Brady* violation by failing to provide him with ATF investigative reports, despite his alleged repeated discovery requests.

However, Petitioner has failed to prove that the ATF investigative reports were material to his guilt or punishment. Petitioner claims that the information contained in the ATF reports could have helped him prepare pre-trial motions and more effectively cross examine the prosecutorial witnesses. Yet, information that would have merely aided in Petitioner's defense is not exculpatory information. Furthermore, Petitioner's explanation of how the information would have aided in his defense is largely incomprehensible. Consequently, Petitioner's claimed *Brady* violation fails.

Here, Petitioner's allegations are entirely without merit, as none of the evidence in the record supports his claims.  As a result, this court will deny Petitioner's Motion for habeas corpus relief without an evidentiary hearing.

Further, as Petitioner has failed to make a substantial showing of the denial of any constitutional right pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability shall be issued.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM LOWERY,<br>　　　　Petitioner,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br>　　　　Respondent. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br>CIVIL ACTION NO. 08-3571<br><br>CRIMINAL ACTION NO. 04-814<br><br> |

## ORDER

AND NOW, this ___ of March, 2009, upon consideration of Petitioner's Amended Motion to Vacate/Set Aside/ Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 117 & Doc. 123), and the Government's Response thereto (Doc. 120), **IT IS HEREBY ORDERED AND DECREED** that Petitioner's Motion is **DENIED**.

IT IS FURTHER ORDERED that the habeas petition is denied without an evidentiary hearing and that no certificate of appealability shall be issued.

IT IS FURTHER ORDERED that the Clerk of the Court shall mark the above-captioned case as **CLOSED** for statistical purposes.

BY THE COURT:

/s/ Petrese B. Tucker
_____
**Hon. Petrese B. Tucker, U.S.D.J.**